Filed 1/29/21  P. v. Miller CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>RICHARD MILLER,<br><br>　　　Defendant and Appellant. | A159345<br><br>(Solano County<br>Super. Ct. No. VCR186579) |

In 2008, defendant Richard Miller, one of three participants in a marijuana robbery, pleaded no contest to second degree murder to avoid going to trial on felony murder charges.  He was sentenced to 20 years to life in state prison.

In 2019, he filed a petition for resentencing under Penal Code section 1170.95.  (Pen. Code, § 1170.95.[1])  The trial court appointed counsel, ruled defendant made a prima facie showing of entitlement to resentencing, and held an evidentiary hearing at which several witnesses, including defendant's co-perpetrators, testified.  After additional briefing by the parties, the court denied the petition.

---

[1] All further references are to the Penal Code unless otherwise indicated.

1

Defendant raises a single issue on appeal—that the trial court misunderstood the nature of its role at the evidentiary hearing stage and failed to make the findings required to deny resentencing. We affirm.

**DISCUSSION**

The Courts of Appeal have taken divergent views as to the nature of the findings trial courts are to make following a section 1170.95 evidentiary hearing.

In *People v. Duke* (2020) 55 Cal.App.5th 113 (*Duke*), review granted January 13, 2021, S265309, the Court of Appeal described the prosecution's burden and trial court's role as follows: "The prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' (§ 1170.95, subd. (d)(3).) The primary requirement for eligibility for resentencing under section 1170.95 is that '[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a)(3).) To carry its burden, the prosecution must therefore prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law—in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder. This is essentially identical to the standard of substantial evidence, in which the reviewing court asks ' "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. . . ." ' " (*Duke*, at p. 123, fn. omitted; see *People v. Garcia* (2020) 57 Cal.App.5th 100, 112-115 (*Garcia*) [although defendant was tried and convicted solely on the basis of the natural and probable

2

consequences doctrine, appellate court affirmed denial of resentencing petition on ground he failed to make a prima facie showing of entitlement to resentencing because the trial evidence would have supported conviction as a direct aider and abettor; the record therefore established defendant "could" have been convicted of murder regardless of the recent changes to section 188].)

In *People v. Lopez* (2020) 56 Cal.App.5th 936, 950-951 (*Lopez*), the Court of Appeal disagreed with *Duke's* characterization that the standard applicable at the evidentiary hearing stage is akin to substantial evidence. Rather, *Lopez* concluded "that to establish a petitioner's ineligibility for section 1170.95 relief for failure to satisfy the third condition, the prosecutor must prove beyond a reasonable doubt the elements of first or second degree murder under the current law."[2] (*Id.* at p. 951.) The court in *People v. Rodriguez* (2020) 58 Cal.App.5th 227 (*Rodriguez*), after a lengthy analysis of the issue, agreed with "the *Lopez* Court of Appeal that it is the [trial] court's responsibility to act as independent fact finder and determine whether the evidence establishes a petitioner would be guilty of murder under amended

---

[2] The *Lopez* court observed, "The question raised by this appeal is how possible or likely must that outcome be. In other words, how confident must the trial court be in the state's ability to prove the petitioner's guilt of murder under current law in order to find petitioner ineligible for relief. Must the prosecutor persuade the trial court that the state theoretically has the requisite ability because there is substantial evidence from which a reasonable trier of fact could convict? Or must the prosecutor persuade the trial court beyond a reasonable doubt that the state has the requisite ability by proving beyond a reasonable doubt each element of murder? In short, what is the standard of proof? (*People v. Mary H.* (2016) 5 Cal.App.5th 246, 255 . . . [' "The function of a standard of proof . . . is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' " [Citation.]'.)" (*Lopez, supra,* 56 Cal.App.5th at p. 949.)

3

sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3)." (*Id.* at p. 243-244.)

While we harbor many of the concerns expressed in the concurring opinion in *Garcia,* we agree with *Lopez* and *Rodriguez* that at the evidentiary hearing stage, the trial court's role is not merely one of review, applying a substantial evidence standard, but of fact finder. On this record, we need not decide whether we wholly agree with *Lopez's* and *Rodriguez's* articulation of the fact-finding role—that the trial court must independently find, beyond a reasonable doubt, each of the elements of murder as now set forth in amended sections 188 and 189. As we shall discuss, we conclude the trial court met the exacting standard articulated in these two cases and made the requisite findings.

Defendant asserts the trial court did not engage in independent fact finding, but rather effectively employed a substantial evidence standard. The Attorney General maintains the trial court did make findings, guided by the principles in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), that defendant was a major participant in the underlying felony and also acted with reckless indifference to human life, and therefore properly denied the resentencing petition.

The pertinent parts of the record are as follows:

At the outset of the evidentiary hearing (held in December 2019, before the decisions in *Duke* and *Garcia*, and in *Lopez* and *Rodriguez*), the trial court stated:

> "Court: Okay. And just so we're on the same page here, what I have the law stating is that, at this point, the burden is on the People to prove beyond a reasonable doubt, that the petitioner is ineligible for resentencing, correct?
>
> "[Prosecutor]: Correct."

4

At the close of evidence, the court asked for additional briefing, stating:

"Court: . . . All right. So, this is what I would like to do. I am familiar with the law in this case. But some of the concepts haven't necessarily been applied in this context, so I want to be careful about how we choose to apply these concepts that have been applied in other circumstances to this hearing.

"I have a lot of notes about the testimony here. And I would like both sides to brief the matters about—if you choose to do so—about why it is, Ms. Collins, that you have met your burden of proof as it applies to what the statute states, and how the facts apply to the legal standards that are within the statute.

"And, Ms. Prince [(defense counsel)], obviously I would like you to brief your position on that same issue."

At the next hearing, counsel first argued the evidence. Defense counsel emphasized there was no evidence defendant intended to kill; indeed, there was no evidence either of the three participants meant to do anything other than commit a robbery. "[T]he bottom line is Mr. Miller was 18 years old at the time. He did not have a subjective intent to kill. The plan was to grab the marijuana and run. That's exactly what he did." Defense counsel also pointed out the court had already granted resentencing to the participant who assertedly had a major hand in planning the robbery but who, according to defense counsel, had "very cleverly managed to make himself not present at the time of the robbery." Counsel argued defendant's culpability was "certainly not more than that of" his cohort.

The prosecutor, in turn, focused on the evidence that defendant was a major participant in the underling felony and acted with reckless indifference to human life, reviewing the evidence in light of the *Banks* factors set forth in CALCRIM No. 703.

5

A colloquy then occurred between the prosecutor and the court as to the prosecutor's standard of proof:

> "[Prosecutor]: . . . the standard of proof, I believe, is I didn't in this hearing have to prove beyond a reasonable doubt that Mr. Miller was a major participant and acted with reckless indifference. It's—I had to prove that a jury could have convicted him based off these facts. And I believe I have met my burden in this case.

> "Court: I think that's the burden in a roundabout way. I think the burden on you is to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. And your burden is to show that he could have been convicted of murder under the new law.

> "[Prosecutor]: I agree with that.

> "Court: From that—I'm getting that from 1170.95(d)(3). So that's the standard on which I'm evaluating this. Okay.

Defense counsel made no objection, but proceeded to further argue the evidence, responding to the prosecutor's assertion the evidence proved defendant was a major participant in the robbery and acted with reckless indifference to human life.

Upon submitting the matter, the trial court stated its ruling on the record as follows:

> "Court: All right. So I've already stated the standard by which I am examining this, and now the matter's been submitted. I'll just restate that.

> "So, in my view, the burden at the hearing was for the prosecution to prove beyond a reasonable doubt that the petitioner Mr. Miller was ineligible for resentencing. That means the prosecutor had to meet a burden to show that petitioner could have been convicted of murder under the new law as it currently exists, not the law that existed at the time that this occurred and was tried.

> "Mr. Miller does argue that his conduct is comparable to that of an individual named Matthews in the case of the People vs.

6

Banks, that's at 61 Cal.4th 788. Matthews was the getaway driver for an armed robbery. In that case, the supreme court held that there was no evidence of that individual's participation in planning, procuring a weapon, because of that he was not a major participant in the murder.

"I see this case as different than that with respect to Mr. Miller being a major participant. I am considering the evidence that Mr. Miller was involved in the planning of the crime. He did bring a weapon. It ended up being the weapon used to kill the victim in this case.

"The fact that there were going to be two weapons present does indicate to me that Mr. Miller knew that this could be a very dangerous situation. He was also present at the scene, unlike Mr. Matthews in the Banks case, who was not present at the scene. That meant he had the ability to facilitate or prevent the killing. I'm considering also his actions following the killing.

"Considering all that, *I do find that he was a major participant in this murder and the robbery that led to the murder*, unlike the defendant–I'm sorry, unlike Mr. Matthews in the Banks case.

"After that, I then need to move to considering whether or not Mr. Miller acted with reckless indifference to human life, and that requires consideration of similar factors. I'm considering Mr. Miller's knowledge of the presence of a weapon, in that he did bring a weapon to this crime. His proximity to the crime. He was in the vehicle right next to Mr. Mackey when Mr. Mackey first tried to shoot. Then he, I think, grabbed the property, the marijuana. And as he left, Mr. Mackey proceeded to shoot and kill the victim in this case. That means he was in a position to minimize the possibility of violence, but he did nothing other than leaving. That indicated either that he was trying to not be part of it, but could also indicate his indifference to what was going on.

"In addition to that, I think there was evidence presented at this hearing that Mr. Miller knew of Mr. Mackey's tendency toward violence. He had been threatened by Mr. Mackey himself, the petitioner had, in the past, Mr. Miller had. So I considered that as

well.

> "So not only did he bring the weapon to this crime that was eventually used to kill the victim, he gave it to an individual he knew that was violent, and there is some discussion about whether or not someone would have been shot. But *it looks to me that Mr. Miller did act with reckless indifference to human life, in considering all that*. Because of that, I'm going to deny his petition to resentencing. I don't think he's eligible for resentencing under the law because he could have been found guilty under the law as it currently exists, and not simply how he was found guilty in the past. So I think he's ineligible for resentencing, and I'm denying the petition." (Italics added.)

There is no question the trial court correctly understood the prosecution had the burden of proof and had to prove beyond a reasonable doubt that defendant was not eligible for resentencing. It is also clear the prosecutor and defense counsel argued whether the evidence presented at the hearing proved beyond a reasonable doubt that defendant could still be convicted of felony murder because he was a major participant in the underlying felony and acted with reckless indifference to human life.

The question the parties dispute on appeal is whether the trial court, sitting as the trier of fact, *actually found* defendant was a major participant in the underlying felony and acted with reckless indifference to human life.

Defendant asserts the trial court did not make such findings. He acknowledges the court stated on the record, "*I do find that he was a major participant in this murder and the robbery that led to the murder.*" (Italics added.) But he essentially claims this was fortuitous word choice. He points out the trial court did not use such explicit terminology with respect to whether defendant acted with reckless indifference to human life. He further points out the court never stated that to deny resentencing, it had to find, beyond a reasonable doubt, each of the elements now required to sustain

malice murder or felony murder.  Rather, the court described its task as determining whether the prosecutor proved "beyond a reasonable doubt that the petitioner is ineligible for resentencing."  Defendant further observes that the prosecutor told the court, "I didn't in this hearing have to prove beyond a reasonable doubt that Mr. Miller was a major participant and acted with reckless indifference.  It's—I had to prove that a jury could have convicted him based off these facts."

The Attorney General, in turn, claims that, regardless of how the prosecutor may have characterized her burden, the trial court *did* find defendant was a major participant in the underlying felony and acted with reckless indifference to human life.  The Attorney General acknowledges that with respect to reckless indifference the trial did not explicitly state, "I find," as it did with respect to defendant being a major participant in the crime, but claims this is effectively what the trial court stated.  The Attorney General further points out the trial court never equated its task with a substantial evidence type of review, which *Lopez* and *Rodriguez* rejected.  Rather, the court repeatedly stated the prosecutor's burden was "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing"—exactly the language of the statute.  (§ 1170.95, subd. (d)(3).)

In *Lopez* and *Rodriguez*, the appellate courts, after discussing the applicable standard, turned to whether the trial courts had actually engaged in the required fact finding, and given the differing records, reached different conclusions.

In *Lopez,* the defendant, to support his assertion the trial court had not applied the correct legal standard, "relie[d] on the trial court's ruling that the People met their burden 'to show beyond a reasonable doubt that [Lopez] could still be convicted of murder. . . .' " (*Lopez, supra,* 56 Cal.App.5th at

9

p. 951.)  "But that statement," said the appellate court, "provide[d] no support for Lopez's position, as the trial court merely used the statutory language.  As discussed above, the third condition is that '[t]he petitioner could not be convicted of first or second degree murder' under the current law.  (§ 1170.95, subd. (a)(3).)  And the prosecutor must prove the inverse—that petitioner could be convicted of degree murder under the current law.  The trial court's use of the statutory language does not convince us that the court misapplied the law."  (*Ibid*.)

"Moreover, the record persuade[d]" the appellate court "that the trial court applied the proper standard.  First, the parties correctly argued below that the trial court could deny the petition only if it found that the elements of second degree implied malice murder had been proved beyond a reasonable doubt.  Specifically, the prosecutor argued that the petition should be denied because 'Lopez is guilty of second-degree murder' because his acts were the proximate cause of the Frosty's death and because Lopez acted with a reckless indifference to human life.  And the prosecutor urged the trial court to 'find that Lopez acted with a reckless indifference to human life when he organized a criminal street gang meeting for the sole purpose of having Fraga determined to be no-good.'  The prosecutor did not ask the court to apply the substantial evidence standard.  Lopez's trial court brief asserted that the pertinent question was 'whether the facts show beyond a reasonable doubt that, with implied malice, Lopez caused the death of Frosty.'  At the hearing, Lopez's counsel framed the question as 'whether or not implied malice was proven beyond a reasonable doubt.'  Neither the prosecutor nor the trial court took issue with defense counsel's characterization of the applicable legal standard."  (*Lopez, supra,* 56 Cal.App.5th at pp. 951-952.)

"Second, the trial court's statements at the hearing indicate[d] that it applied the correct standard.  The court concluded that the elements of implied malice murder 'were satisfied with the evidence that was brought out during the trial, and of course, I was the trial judge.'  As to Lopez's mens rea, the court stated that trial testimony showed that Lopez knew that voting Frosty 'no good' meant Frosty 'was basically marked for death.'  The foregoing statements show that the court understood it was required to find the elements of murder had been proved, not find merely that there was sufficient evidence from which some hypothetical jury could make such findings.  Moreover, the trial court referenced the beyond a reasonable doubt standard of proof and never used the words 'substantial evidence,' 'sufficient evidence,' or made any other indication that it was applying a sufficiency of the evidence standard." (*Lopez, supra,* 56 Cal.App.5th at p. 952.)

On the other hand, in *Rodriguez,* the trial court, "[r]ather than find[ing] beyond a reasonable doubt that Rodriguez had directly aided and abetted the murder of Lopez, . . . determined only that 'there is sufficient evidence in the record to support an express malice murder theory.' " (*Rodriguez, supra,* 58 Cal.App.5th at p. 244.)  The appellate court rejected the Attorney General's "generous interpretation of the court's language" and assertion the trial court had, itself, made the requisite findings.  (*Ibid.*)  "As the Attorney General points out, the [trial] court observed that the issue to be decided was whether a theory of liability existed other than natural and probable consequences 'that could still support beyond a reasonable doubt' a conviction for second degree murder, and subsequently stated it was required to review the record to determine 'whether or not there is evidence in the record beyond a reasonable doubt that could support a murder conviction.'  But both of those formulations of the standard used the phrase 'could support'—the appellate

11

standard of review—not 'does support beyond a reasonable doubt' or equivalent language, which would indicate the court had actually found the evidence established Rodriguez was guilty of murder as a direct aider and abettor. None of the court's other comments suggests it understood its obligation to make a finding of guilt, not simply a determination that a trier of fact, applying the beyond a reasonable doubt standard, could make such a finding. To the contrary, the court's determination that Rodriguez's motive to commit murder was 'supported by substantial evidence' and its statement toward the end of the hearing that Rodriguez 'is entitled to be resentenced if, in fact, there is no other evidence in the record that could support any alternative theory,' as well as its ultimate ruling, reveal the court's application of the incorrect standard." (*Id.* at pp. 244-245.)

In our view, the record in the instant case is more like that in *Lopez* than in *Rodriguez*. As we have recited, it is clear the trial court understood the prosecutor had the burden of proof and had to prove beyond a reasonable doubt that defendant was ineligible for resentencing. The parties argued, respectively, whether the evidence proved the two requisite elements now required for felony murder, and the trial court discussed and weighed this evidence. The court then expressly found defendant was a major participant in the robbery. And while the trial court did not use this exact language in discussing whether defendant also acted with reckless disregard for human life, we conclude the court so found. The court's language is *not* the language of substantial evidence review, and no talismanic language is required where, as here, the only fair reading of the court's language, in context, is that it engaged in fact-finding. (See *Lopez, supra,* 56 Cal.App.5th at p. 952 [significant that trial court did not use language indicative of substantial evidence review].)

12

It is true, as defendant points out, that the prosecutor asserted she did not have to prove "beyond a reasonable doubt that Mr. Miller was a major participant and acted with reckless indifference."  But, as the Attorney General points out, the court did not agree with the prosecutor's articulation, but said she had articulated her "burden in a roundabout way" and that her burden was to prove "beyond a reasonable doubt that the petitioner is ineligible for resentencing," the exact terminology of the statute.  (See (*Lopez, supra,* 56 Cal.App.5th at pp. 951-952 [trial court's recitation of the statutory language indicated it understood its fact-finding role].)

## DISPOSITION

The order denying defendant's petition for resentencing is AFFIRMED.

_____
Banke, J.

We concur:

_____
Humes, P.J.

_____
Sanchez, J.

A159345, People v. Miller